UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

     v.                                CASE NO. 8:24-cr-330-VHC-CPT

JORDAN GUY MACDONALD GOUDREAU and
YACSY ALEXANDRA ALVAREZ MIRABAL

## UNITED STATES' MOTION FOR REVOCATION OF RELEASE ORDER

The United States of America, by Roger B. Handberg, United States Attorney

for the Middle District of Florida, requests that the Court revoke the magistrate

judge's order of release as to defendant Jordan Guy MacDonald Goudreau

("Goudreau") issued on July 30, 2024, in the Southern District of New York. Based

on the factors in 18 U.S.C. § 3142(g), there are no conditions of release that will

reasonably assure the appearance of Goudreau as required. Accordingly, he should

be detained pending trial.

### I.    BACKGROUND

#### a.  Procedural History

On July 16, 2024, a grand jury returned a 14-count indictment against

Goudreau, charging him and codefendant Yacsy Alexandra Alvarez Mirabal

("Alvarez") with conspiracy to violate export laws, in violation of 18 U.S.C. § 371;

smuggling, in violation of 18 U.S.C. § 554; violations of the Arms Export Control

Act, in violation of 22 U.S.C. § 2778; and violations of the Export Reform Control

Act, in violation of 50 U.S.C. § 4819. Goudreau also was charged with possession of

unregistered silencers, in violation of 26 U.S.C. § 5861(d) and unlawful possession of machine guns, in violation of 18 U.S.C. § 922(o).

Two weeks later, on July 30, 2024, federal agents in New York City executed the warrant for Goudreau's arrest. Goudreau was apprehended in Manhattan outside an apartment complex. Based on their investigation, law enforcement had reason to believe that Goudreau was residing at that address with a female associate.

Later that evening, Goudreau made his initial appearance in the U.S. District Court for the Southern District of New York before Magistrate Judge Gary Stein. Case No. 24-mj-2753 (S.D.N.Y.). The government moved for pretrial detention based on, among other things, a serious risk that Goudreau may flee if released on bond. *See* Ex. A, July 30, 2024 Transcript at 9. Magistrate Judge Stein denied the request for detention. The court set conditions of release, including a $2 million bond secured by "Property owned by Jen Gatien (girlfriend)," travel restricted to SDNY/EDNY and the MDFL, and home detention with location monitoring. Ex. B, Bail disposition. The court additionally required that Goudreau be detained until all conditions are met. *Id.* At the government's request, Magistrate Judge Stein stayed execution of the release order until close of business on July 31, 2024, so that the government could file the instant appeal.

On July 31, 2024, this Court granted the government's request to extend the stay until the Court reviewed the instant motion for revocation. Doc. 10.

### b. Offense Conduct

As alleged in the indictment, from at least as early as November 2019 and

through March 23, 2020, Goudreau, Alvarez, and others conspired to export, and did export, AR-type firearms, night vision devices, laser sights, and other equipment from the United States to Colombia, without obtaining the required export licenses, to carry out an armed incursion into Venezuela. Goudreau is a Canadian-born naturalized U.S. citizen and former Green Beret. Alvarez is a Venezuelan national who was residing in Colombia at the time.

In furtherance of the conspiracy, Goudreau, who was living in Melbourne, Florida, domestically procured the above-mentioned equipment, including firearm components and silencers, and coordinated with Alvarez and others for their transport to Colombia. Goudreau also enlisted the unpaid services of U.S. persons who, among other things, helped assemble approximately 60 firearms—some of which were machined to fire as fully automatic weapons—at a warehouse in Melbourne. Goudreau and Alvarez arranged for the transport of this equipment from Florida to Colombia, flying back and forth on a private aircraft owned by Alvarez's boss. Goudreau also purchased a yacht that was intended to, at least in part, move equipment from the United States to Colombia without law enforcement detection.

On March 23, 2020, Colombian National Police seized a cache of approximately 24 semi-automatic rifles, two fully automatic rifles, laser sights, silencers, and other military-type equipment at a highway checkpoint. Earlier that day, Alvarez had helped load the bags of equipment into the driver's car at Alvarez's apartment in Barranquilla, Colombia. The weapons and accessories were intended for use at camps in which mercenaries were training for the armed invasion.

3

At around the same time, Goudreau and an associate were stranded in the middle of the Caribbean on the yacht that Goudreau had purchased. The vessel, which had become inoperable, was carrying additional equipment, including firearms. They were eventually rescued by a commercial tanker and returned to the United States. The yacht, and the items on board, sank.

On May 3, 2020, a number of individuals in Colombia, including former Green Berets Luke Denman and Airan Berry, whom Goudreau had recruited for the mission, followed through with the plan to invade Venezuela by sea. The invasion was unsuccessful, and several people died. Denman and Berry were captured and imprisoned in Venezuela until their release in December 2023. *See* Venezuela Releases Two Former Green Berets As Talks With U.S. Progress (Dec. 19, 2023), https://www.forbes.com/sites/eliasferrerbreda/2023/12/19/venezuela-releases-two-former-green-berets-as-talks-with-us-progress/. Goudreau, who was stateside, immediately and publicly claimed responsibility for the failed attack. *See, e.g.*, Ex-Green Beret claims he led foiled raid into Venezuela (May 4, 2020), https://apnews.com/article/caribbean-ap-top-news-venezuela-south-america-international-news-5f44624bb7442d85e431cd64a4aed3a8.

### c.  Post-Offense Conduct

Despite claiming responsibility for the failed invasion, when Goudreau's involvement became subject to law-enforcement scrutiny, Goudreau took measures to evade detection and flee the United States. Based on a forensic examination of Goudreau's cellphone, on May 5, 2020—two days after the failed invasion—

Goudreau searched on Google for the following, among other, terms: "assylum Canada"; "best countries for assylum"; and "beat country for.assylum from America." He subsequently deleted those searches.

In the days that followed, Goudreau performed the following searches, among others, on Google, and visited sites related to those searches:

| Date | Searched Terms/Phrases |
|---|---|
| May 11, 2020 | drive to Canada customs |
| May 11, 2020 | how to run and stay hidden from the feds |
| May 11, 2020 | how to be a successful fugitive on the run |
| May 11, 2020 | do i need a passport for my sailboat |
| May 11, 2020 | can i take a boat with no passport |
| May 11, 2020 | what happens if i run from the law |
| May 11, 2020 | what happens if i skip my trial |
| May 11, 2020 | will i lose my va benefits if i am indicted |
| May 11, 2020 | can cryptocurrency be tracked |
| May 14, 2020 | how do you prove export of weapons |
| May 14, 2020 | smuggle guns crime |
| May 14, 2020 | how do you prove gun smuggling |

The investigation also revealed that Goudreau researched and took steps to flee to Mexico after his involvement in the coup became public. On May 14, 2020, Goudreau performed several searches on Google related to "la bestia," also known as "the Beast," which is a freight train in Mexico that migrants are known for taking

north to reach a U.S. border crossing. *See, e.g.*, Aboard 'the Beast' on a Journey to America (May 10, 2023),

https://www.nytimes.com/2023/05/10/world/americas/migrants-beast-train-mexico.html. Those searches included: "does the beast go north and south?" and "ride the beast mexico south to Guatemala." Goudreau then searched "favorite town for expats mexico" and "how do i open a bank account in Mexico." What's worse, in the same string of searches, Goudreau searched "us citizenship dark web," suggesting that he was looking to obtain a fake identity as part of his escape plan.

U.S. Customs and Border Protection have no record of Goudreau legally crossing into Mexico around this time. Law enforcement, however, obtained evidence that Goudreau entered Mexico by land and presented Mexican immigration officials with his U.S. passport. *See* Ex. C, Mexican immigration form. The immigration document bears an entry stamp with the date "25 Mayo" in faint print, and it was accompanied by additional documentation reflecting a date of "Mayo" and "2020." *Id.* There is also evidence that Goudreau secured a Mexican driver's license and motorcycle vehicle registration card, with "expedition" or issuing dates in June 2021 and May 2021, respectively. *See* Ex. D, Mexican license and registration. There is no U.S. government record of Goudreau reentering the United States from Mexico at any time after May 2020.

Since the offense conduct, Goudreau has not maintained a stable, known residence. At times relevant to the charges in the indictment, Goudreau had worked and resided at a warehouse in Melbourne, Florida. Based on witness interviews,

Goudreau's lease terminated in April 2020, and he subsequently moved out of the warehouse. Goudreau has not updated his address with the Florida Department of Motor Vehicles since April 2020.

Before his arrest, law enforcement had reason to believe that Goudreau was residing in New York City with Jen Gatien, the female associate identified in Goudreau's bond paperwork. *See* Ex. B. Goudreau did not update any government records to reflect an address in New York. Despite performing several days of surveillance at Gatien's address known to law enforcement, federal agents did not observe Goudreau there consistently or with a pattern of regularity before he was arrested.

Based on publicly available information, Goudreau and Gatien, a filmmaker, have been making a documentary about Goudreau's "connection to his failed 2020 coup." Former U.S. Green Beret Jordan Goudreau Is the Subject of Upcoming Neon Documentary (EXCLUSIVE) (Aug. 2, 2024), https://variety.com/2024/film/news/green-beret-jordan-goudreau-neon-documentary-men-of-war-1236090534/. According to film's logline, the documentary depicts Goudreau "'in over his head *and on the run* after mounting the failed Venezuela coup and *being chased by the American government* who he spent his life fighting for." *Id.* (emphasis added).

## II.   MEMORANDUM OF LAW

### a.  Standard of Review

Under 18 U.S.C. § 3145(a)(1), "[i]f a person is ordered released by magistrate

judge, or by a person other than a judge of a court having original jurisdiction over

the offense . . . the attorney for the Government may file, with the court having

original jurisdiction over the offense, a motion for revocation of the order." The

district court must conduct a *de novo* review of the magistrate judge's release order.

*United States v. Hurtado*, 779 F.2d 1467, 1481 (11th Cir. 1985).

### b. Analysis

As a preliminary matter, the government was entitled to seek detention under

18 U.S.C. §§ 3142(f)(1)(E) (non-crime of violence felony involving possession of a

firearm), (f)(2)(A) (serious risk of flight), and (f)(2)(B) (serious risk of obstruction).

This Court's review of the magistrate judge's decision to deny pretrial detention is

guided by the factors set forth in section 3142(g), and it is the government's burden to

show by clear and convincing evidence that no condition or combination of

conditions will reasonably assure the appearance of Goudreau. That burden has been

met.

*First*, the nature and circumstances of the offenses charged, including that they

involve firearms, strongly favor detention. 18 U.S.C. § 3142(g)(1). As noted above,

the 14-count indictment alleges violations of export and firearms laws that carry

significant penalties. If convicted on the substantive export violations, Goudreau

faces a maximum term of imprisonment of 20 years. He faces a maximum of 10

years' imprisonment on the firearms violations, which include a count for unlawful

possession of machineguns. Goudreau, a former U.S. service member, willfully

violated federal law as part of a plan to invade another country, a plan that

ultimately resulted in the deaths of several Colombians and the over three-year

imprisonment of two of his friends and fellow Green Berets. In the context of this

case, the egregiousness of these violations cannot be overstated.

*Second*, the weight of the evidence against Goudreau is overwhelming. *Id.* §

3142(g)(2). At the detention hearing, Judge Stein noted that it was difficult for the

court to assess the weight of the evidence before it, and therefore, the court did not

view that factor as compelling. Ex. A, Tr. at 40. But the government possesses

abundant evidence that shows Goudreau committed the charged violations beyond a

reasonable doubt. To start, the firearms and military-type equipment alleged in

Counts Two through Fourteen of the indictment were seized in Colombia by law

enforcement in March 2020, and transferred to U.S. custody. *See* Ex. E, Photographs

of seized items. Several of those items, including the laser sights, night vision device,

and silencers, line up with purchase orders that Goudreau completed online before

March 2020. For example, the serial number inscribed on the KDSG PVS-14

Monocular night vision device alleged in Count 8 matches the serial number on the

same device that Goudreau purchased in January 2020. *See* Ex. F, Order details for

KDSG PVS-14. Similarly, Goudreau's order history reflects a purchase of eight

solvent traps, also known as silencers, in December 2019; Colombian authorities

recovered eight silencers in March 2020. *Compare* Ex. G, Order confirmation from

December 2019 *with* Ex. E, Photographs at page 8.

What's more, Goudreau's DNA was recovered from two of the rifles that

Colombian authorities seized, including one that the Bureau of Alcohol, Tobacco,

and Firearms has concluded meets the definition of machine gun under the National

Firearms Act. The DNA of two associates who had helped Goudreau assemble the

firearms also was recovered from the rifles. Neither of those associates had ever

traveled to Colombia.

As to Goudreau's willfulness, there is strong evidence that Goudreau was

aware of the licensing requirements to export military items and firearms. In addition

to statements that Goudreau made to law enforcement in January 2020 about export

licenses, Goudreau's Google history shows incriminating searches during the

timeframe alleged in the indictment, including "no itar night vision" and "itar

regulation," which refer to the International Traffic in Arms Regulations ("ITAR").

Moreover, within days of the failed invasion, Goudreau researched "itar export

prison" online—further evidence that he already was aware of laws that he had

violated.

*Third*, Goudreau's history and characteristics, including his character, lack of

ties to this District, and financial resources, strongly counsel in favor of detention. 18

U.S.C. § 3142(g)(3). Although Goudreau has no previous criminal history, his

conduct in this case—both the offense conduct and his actions thereafter—reflects a

flagrant disregard for U.S. laws and responsibility for one's actions. As described

above, when Goudreau expected that he was under investigation, he quickly

explored and took steps to flee the country. He has also deliberately avoided

updating his address in government databases, despite relocating to another state.

An additional concern is Goudreau's lack of ties to the Middle District of

Florida. He has not maintained a known residence in Florida for almost four years.

There is no record of him having any familial ties to the District, either; in fact,

Goudreau's family resides in Canada. At Goudreau's detention hearing in New

York, defense counsel represented to the Court that within the last year Goudreau

traveled to Canada to visit family. Ex. A, Tr. at 29. U.S. Customs and Border

Protection have no record of any crossings in or out of the U.S. since Goudreau

obtained a U.S. passport in April 2023. Based on the lack of record, and Goudreau's

conduct in this case, there is reason to believe that to the extent that he traveled to

Canada, he did not do so at a port of entry.

Goudreau's counsel also conceded at the detention hearing that Goudreau's

ties to this District are limited to his ownership of a boat that he keeps on MacDill

Air Force Base, "where he often resides" and "routinely stays." *Id.* at 29, 32. The

Court should not consider this a valid tie to this community; in fact, his ownership of

a vessel that he could, and knows how to, use to flee is extremely troubling. As

alleged in the indictment, in February 2020, Goudreau and an associate attempted to

travel by boat to Colombia. *See* Overt Act mm. Also, approximately one week after

the failed invasion, Goudreau searched on Google, "do i need a passport for my

sailboat" and "can i take a boat with no passport." *See supra* page 5.

Moreover, since the detention hearing, the government has learned that the

vessel, a 2005 Dragonfly 920 sailboat, is docked at MacDill's marina in a long-term

wet slip. Curiously, Goudreau's boat is registered in Keesler Air Force Base in

Biloxi, Mississippi, with a registration address at a USPS in Tampa, Florida. *See* Ex.

11

H, Boat registration. And contrary to Goudreau's representations at the detention hearing, MacDill officials confirmed that residing on boats stored on the base has been prohibited since 2010.

Not only does Goudreau have the physical means to flee, but he has the money to do so as well. Goudreau represented at the hearing that he receives approximately $10,000 per month from the military. *See* Ex. A, Tr. at 33. The government has since verified that amount, which includes approximately $3,700 that he is entitled to receive only while enrolled in school.[1] In addition to his military benefits, Goudreau keeps significant amounts in cryptocurrency—something he started doing after May 2020. As of June 2024, Goudreau had approximately $44,000 in a U.S.-based cryptocurrency exchange platform. It is widely known that cryptocurrency is used to facilitate criminal activity while evading detection.

And *fourth*, the nature and seriousness of the danger to any person if Goudreau is released similarly supports detention. *Id.* § 3142(g)(4). Law enforcement has reason to believe that Goudreau will attempt to obstruct justice in the form of witness tampering if released on bond. A cooperating witness informed federal agents in 2020 that Goudreau had coached him on what to say if he was approached by law enforcement. Although the government has no evidence of Goudreau using threats or violence in the past, there is evidence that Goudreau possessed and

---

[1] At the hearing, the court was informed that Goudreau has been attending film school in New York. The government verified his enrollment at the New York Film Academy's Spring 2024 one-year screenwriting program that started on January 8, 2024. It ends on August 10, 2024.

possibly still possesses a pistol for personal use. His Google history from May 2020 included visiting a webpage titled, "Is it possible to sneak a gun through airport security?" and searching "hide pistol xray." Goudreau's desire to travel with a firearm illegally should give the Court concern if he is released into the community.

Based on the totality of the circumstances, and for the reasons stated at the detention hearing, there is no condition or combination of conditions that will assure Goudreau's appearance for trial in this District. Magistrate Judge Stein's order of release primarily was based on Goudreau's ties to one individual in New York City—Jen Gatien. At the hearing, defense counsel represented numerous times that Goudreau has been living openly in New York with his "partner" for over two years, and that his "partner" would be willing to sign a bond and post her $2 million apartment as security. *See* Ex. A, Tr. at 28, 31-32. In fashioning Goudreau's conditions of release, Judge Stein observed that Goudreau has been in a "long-time relationship" and explained that the financial conditions imposed "should further be a very significant disincentive for [Goudreau] to violate . . . because in so doing he would be hurting people, at least among the people he holds most dear." *Id.* at 40.

It is clear from Judge Stein's ruling that Goudreau's ties to Gatien, including that he could be on home detention at her apartment and continue to attend film school, presented the court with one alternative to detention that would reasonably assure Goudreau's appearance. But the government is in receipt of contrary information that upends that finding. At the time of his arrest, Goudreau told one of the arresting federal agents in no uncertain terms that Gatien, who was present at the

13

time, was not his girlfriend. *See* Ex. I, Barton affidavit. Additionally, the government

has learned that Gatien is no longer willing to co-sign Goudreau's $2 million bond or

post her apartment as security. In short, the sole alternative to detention no longer

exists.

When asked if there was *anyone* else in the United States who could exercise

moral suasion over him or co-sign his bond, Goudreau offered that he had one friend

who lives in Oklahoma.[2] *See* Ex A, Tr. at 34. As of the time of this filing, Goudreau

has not met the conditions of release or moved for modification to allow for a

substitute custodian.

It is true that in 2020 Goudreau knew that he was under investigation, and he,

through his counsel, interacted with the government. But at the same time,

Goudreau thoroughly researched, and acted on, illegally leaving the United States

and evading law enforcement detection. When Goudreau believed that attention had

shifted away from him, he began working on a documentary about his criminal

activity with a New York filmmaker. He did not live as openly as he claims. Now

that he has been charged with serious violations that carry significant prison

sentences, Goudreau has every incentive and wherewithal to flee—this time for

good. He should be ordered detained.

---

[2] The location of the friend is noted as indiscernible in the transcript. Based on conversations with government counsel and the case agent who were present at the hearing, the government knows it to be Oklahoma.

## III.    CONCLUSION

For the foregoing reasons, and those stated on the record during the detention hearing on July 30, 2024, the United States respectfully requests that the Court revoke the magistrate judge's order of release, and order Goudreau detained pending trial.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:    /s/ *Risha Asokan*
RISHA ASOKAN
Assistant United States Attorney
Florida Bar No. 1003398
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:  (813) 274-6000
Facsimile:   (813) 274-6358
E-mail:       risha.asokan2@usdoj.gov

**U.S. v. Jordan Guy MacDonald Goudreau**        **Case No. 8:24-cr-330-VHC-CPT**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Risha Asokan*
RISHA ASOKAN
Assistant United States Attorney
Florida Bar No. 1003398
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:  (813) 274-6000
Facsimile:  (813) 274-6358
E-mail:      risha.asokan2@usdoj.gov