UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                              Case No.: 8:24-cr-330-VMC-CPT

JORDAN GUY MACDONALD GOUDREAU

_____/

**ORDER**

This matter comes before the Court upon the United States of America's Motion for Revocation of Release Order (Doc. # 22), filed on August 4, 2024. Defendant Jordan Guy MacDonald Goudreau responded on August 21, 2024. (Doc. # 41). The Court held a hearing on the Motion on September 4, 2024. For the reasons that follow, the Motion is denied. The Court agrees with Magistrate Judge Stein's order, denies the Motion of the United States for the detention of Mr. Goudreau, makes several alterations to the release order, and orders that Mr. Goudreau be released.

I.  **Legal Standard**

The Eleventh Circuit "require[s] that our district courts undertake de novo review of the pretrial detention determinations of magistrates." United States v. Hurtado, 779 F.2d 1467, 1481 (11th Cir. 1985). The district court must "enter its own findings of fact where factual issues remain

1

to be resolved." United States v. King, 849 F.2d 485, 490 (11th Cir. 1988).

"[T]he district court must enter written factual findings and written reasons supporting its decision. Of course, if the district court concludes that the additional evidence does not affect the validity of the magistrate's findings and conclusions, the court may state the reasons therefor and then explicitly adopt the magistrate's pretrial detention order." King, 849 F.2d at 490.

To determine what conditions of release will reasonably assure the appearance of the defendant as required and the safety of any other person and the community, the Court considers:

1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
2) the weight of the evidence against the person;
3) the history and characteristics of the person, including
a) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
b) whether, at the time of the current offense or, the person was on probation, on parole, or on other release pending trial, sentencing, appeal,

   or completion of sentence for an offense under Federal, State, or local law; and
  4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). The United States' burden as to risk of flight is preponderance of the evidence, and its burden as to dangerousness is clear and convincing evidence.

## II. Background

Mr. Goudreau is a former Green Beret who was honorably discharged in 2016 due to severe combat-related injuries. (Doc. # 41-1). He suffered many concussions and his body started to "break down" by the end of his service. (Doc. # 41 at 6-8). He has no criminal history. (Doc. # 53).

This case was indicted on July 16, 2024. (Doc. # 1). However, the offense conduct is from 2020. (Doc. # 22 at 2-4). According to the government, Mr. Goudreau and his co-defendant Ms. Yascy Alexandra Alvarez Mirabel, conspired to export, and did export, firearms and other equipment from the United States to Colombia in violation of export laws. (Id.). The guns were exported as part of a plan to invade Venezuela by sea and overthrow the government. (Id.). On May 3, 2020, the invasion failed, as several people died, and two Americans were arrested in Venezuela. (Id.). Mr. Goudreau, who was

3

stateside, claimed responsibility for the failed attack. (Id.).

On July 30, 2024, Mr. Goudreau was arrested via a warrant in New York. (Doc. # 25-2). He was apprehended outside of a Manhattan apartment complex, where he was apparently residing with Jen Gatien for the last two-and-a-half years. (Doc. # 22-1 at 28).

Later that evening, Mr. Goudreau made his initial appearance in the Southern District of New York before Magistrate Judge Gary Stein. (Id. at 4). The government moved for pretrial detention. (Id. at 11). The government's first argument at the hearing was the nature of the crime, citing the significant amount of guns involved and the circumstances surrounding the failed invasion. (Id. at 9-10). The government next cited the weight of the evidence, referring to Mr. Goudreau's DNA being recovered on one of the machineguns seized in Colombia, and order confirmations and text messages showing his purchase of the illegal items. (Id. at 13).

The government then argued extensively that Mr. Goudreau was a significant flight risk, largely relying upon his 2020 search history and travel to Mexico. (Id. at 14-23). During

4

the period immediately following the failed invasion, Mr. Goudreau performed the following internet searches:

> May 11, 2020: drive to Canada customs
>
> May 11, 2020: how to run and stay hidden from the feds
>
> May 11, 2020: how to be a successful fugitive on the run
>
> May 11, 2020: do i need a passport for my sailboat
>
> May 11, 2020: can i take a boat with no passport
>
> May 11, 2020: what happens if i run from the law
>
> May 11, 2020: what happens if i skip my trial
>
> May 11, 2020: will i lose my va benefits if i am indicted
>
> May 11, 2020: can cryptocurrency be tracked
>
> May 14, 2020: how do you prove export of weapons
>
> May 14, 2020: smuggle guns crime
>
> May 14, 2020: how do you prove gun smuggling

(Doc. # 22 at 5).

Mr. Goudreau entered and resided in Mexico in May 2020, as evidenced by a Mexican immigration form showing he entered Mexico, a Mexican driver's license, and a Mexican motorcycle vehicle registration card. (Doc. ## 22-3; 22-4). His stay in Mexico was confirmed by the parties at the hearing on September 4, 2024. Mr. Goudreau also travelled to Canada last year to visit his sick mother, who has since passed. (Doc. # 22-1 at 28-29). The government argued that this search history

from 2020, combined with his travel to Mexico, demonstrated that Mr. Goudreau presented a flight risk.

Mr. Goudreau's counsel argued for his release. First, counsel noted that Mr. Goudreau has been living with Ms. Gatien in the Manhattan apartment for the last two-and-a-half years. (Doc. # 22-1 at 27). Counsel added that Mr. Goudreau frequently travels back to Tampa, where he lives on a boat that is docked at MacDill Air Force base. (Id. at 28). To get on and off the base, he must show his identification. (Id.). Counsel represented that Ms. Gatien would co-sign a bond and pledge her apartment as collateral, which has a value of more than $2 million. (Id. at 32). Counsel also represented that there is a second individual who would sign, but this individual was not identified. (Id. at 33-34).

Judge Stein concluded that Mr. Goudreau had to be released because there were conditions that could assure the safety of the community and his appearance at future proceedings. (Id. at 39). Judge Stein was unpersuaded by the government's arguments regarding flight risk because the internet searches occurred four years ago, Mr. Goudreau has been aware in the years since that he is under investigation, and yet, he was still here and able to be located by law enforcement. (Id. at 40-41). Judge Stein also cited the fact

6

that Mr. Goudreau has been in a long-term relationship. (Id.). He then imposed the following conditions: Mr. Goudreau must sign a $2 million bond, cosigned by two different individuals (Ms. Gatien and the second individual), and secured by the apartment owned by Ms. Gatien; he was restricted to home detention and travel was limited to the Southern District of New York, the Eastern District of New York, and the Middle District of Florida; he needed to submit to an initial urinalysis; and to refrain from possessing any firearms, destructive devices, or other dangerous weapons. (Id. at 42-46).

The government requested and was granted a 24-hour stay of the release order to file an appeal with this Court. (Id. at 46-49). The government filed a motion for a stay of the release order pending its appeal of Judge Stein's release order on July 31, 2024. (Doc. # 9). The Court granted the stay on July 31, 2024. (Doc. # 10).

In the government's Motion, it largely relies upon the same arguments and evidence that it put forth to Judge Stein. (Doc. # 22). In its Motion, the government presented additional evidence to attempt to put into question some of the evidence presented to Judge Stein.

7

First, the government challenged the exact relationship between Mr. Goudreau and Ms. Gatien, and whether she was willing to co-sign the bond. The government provided an affidavit from one of the arresting officers which states that Mr. Goudreau said at the scene that Ms. Gatien was not his girlfriend. (Doc. # 22-9). The government also claimed to have learned, without citing any evidence, that Ms. Gatien is no longer willing to co-sign the bond. (Doc. # 22 at 14). In response, Mr. Goudreau provided an affidavit from Ms. Gatien, in which she swears that Mr. Goudreau is a close friend and that she is willing to co-sign the bond and provide the collateral for the bond. (Doc. # 41-8).

Second, the government claimed that there is not a second person willing to co-sign the bond, noting that this person never came forward to co-sign the bond. (Doc. # 22 at 14). Yet, Mr. Goudreau provided an affidavit from Mr. Ryan Reeves, in which he swears that he lives in Florida, served with Mr. Goudreau in Afghanistan, considers him to be a brother, and will co-sign the bond. (Doc. # 41-9).

Third, the government put into question whether Mr. Goudreau is living on a boat at MacDill Air Force Base. The government claimed that MacDill officials confirmed that residing on boats at the base has been prohibited since 2010.

(Doc. # 22 at 12). In response, Mr. Goudreau countered that many veterans dock their boats at the base and live there. (Doc. # 41 at 31-32).

Fourth, the government provided evidence documenting Mr. Goudreau's travel to Mexico, including a Mexican immigration form showing he entered Mexico, a Mexican driver's license, and a Mexican motorcycle vehicle registration card. (Doc. ## 22-3; 22-4). The defense countered that his travel to Mexico is a non-issue because he was not under indictment or subject to any bond, meaning he was free to travel anywhere he pleased. (Doc. # 41 at 33). The defense also provided additional documentation showing that he travelled to Mexico using his American passport. (Id. at 34).

On September 4, 2024, the Court held a hearing for the parties to provide additional arguments. (Doc. # 45). The Motion is ripe for review.

### III. Analysis

The Court has reviewed Judge Stein's release order, and considered the additional evidence since presented to the Court. The Court concludes that Judge Stein made well-reasoned findings of fact and conclusions of law, and that the additional evidence presented to the Court does not affect Judge Stein's ultimate conclusion that Mr. Goudreau should be

released. See King, 849 F.2d at 490 ("[T]he district court must enter written factual findings and written reasons supporting its decision. Of course, if the district court concludes that the additional evidence does not affect the validity of the magistrate's findings and conclusions, the court may state the reasons therefor and then explicitly adopt the magistrate's pretrial detention order.").

The Court is unpersuaded by the government's argument that Mr. Goudreau's search history immediately following the failed invasion demonstrates his present willingness to flee. (Doc. # 22 at 5). The search history referenced by the government is now over four years old. In the years since, Mr. Goudreau has not fled, has been living in the open, and was able to be located by law enforcement. (Doc. # 22-1 at 28). If these internet searches had in fact shown a desire to flee, then Mr. Goudreau would have fled soon after the internet searches were conducted. Therefore, the Court agrees with Judge Stein's conclusion that Mr. Goudreau's 2020 internet search history does not demonstrate a current willingness to flee.

Next, the Court disagrees with the government's argument that Mr. Goudreau's travel to Mexico between May 2020 and June 2021 was an attempt to flee. The Mexican immigration

10

form showing he entered Mexico, Mexican driver's license, and Mexican motorcycle vehicle registration card all contain Mr. Goudreau's legal name, showing that he was not using any aliases. (Doc. ## 22-3; 22-4). The defense also presented another immigration form from Mexico documenting Mr. Goudreau's entry in which he used his American passport, showing further that he was not attempting to obscure his travel to Mexico. (Doc. # 41 at 34). Furthermore, Mr. Goudreau had not been charged or indicted, or directed by a court order to remain in the United States. The Court finds no evidence to suggest he was living in Mexico as part of an attempt to flee the country, as the government argues. Accordingly, the Court finds that his travel in 2020 and 2021 to Mexico does not demonstrate that Mr. Goudreau is a flight risk.

At the hearing, the government argued that Mr. Goudreau was a risk to obstruct justice if released. The government alleged that a cooperating witness informed federal agents that Mr. Goudreau was attempting to coach him in 2020 on what to say if approached by law enforcement. Even accepting this allegation as true, the Court has fashioned conditions that will assure that Mr. Goudreau may not attempt to obstruct justice by ordering Mr. Goudreau not to contact any witnesses or co-defendants, except through counsel. Therefore, the

11

Court does not believe that any supposed prior obstructive conduct necessitates detention.

The government also argued that Mr. Goudreau associates with convicted felons such as Mr. Cliver Alcala, which shows that he will pose a danger to the community if released. The defense concedes in its response that Mr. Goudreau associates himself with Mr. Alcala by including a sentencing letter Mr. Goudreau wrote on Mr. Alcala's behalf and by providing proof that Mr. Goudreau attended Mr. Alcala's sentencing on April 11, 2024. (Doc. # 41 at 30-31). At the sentencing, Mr. Alcala was sentenced to 260 months of incarceration. If anything, the Court agrees with the defense that the letter to the sentencing court and his attendance at court proceedings further show that Mr. Goudreau was living a public life in the years since the offense conduct.

At the hearing, the Court extensively assured both that a third-party custodian was willing and able to be responsible for Mr. Goudreau's appearance and that Ms. Gatien was willing and able to pledge her $2 million apartment to secure the bond. Mr. Ryan Reeves was present at the hearing and answered questions of the Court. He stated that he was a retired Green Beret who knew Mr. Goudreau from their shared time in the military. He stated that he lives in Freeport, Florida, with

his wife and young child, works full-time, and also creates a podcast that helps veterans transition into civilian life. Mr. Reeves stated that Mr. Goudreau could live with him if released. Mr. Reeves stated that he views Mr. Goudreau as a "brother." After being advised by the Court of all the responsibilities involved with being a third-party custodian, Mr. Reeves stated that he was willing and able to do so. The Court was convinced that Mr. Reeves would serve as an effective third-party custodian based upon his close relationship with Mr. Goudreau, his full-time employment, his family, and his commitment to helping fellow veterans transition into civilian life.

The Court also asked questions of Ms. Gatien, who was present at the hearing. She stated that her apartment is worth over $2 million, which she could substantiate with documentation, and that she owned the property outright. She stated that she views Mr. Goudreau to be a close friend and that she has complete confidence that he will abide by the conditions of his release. The Court was convinced that Ms. Gatien's property would effectively secure the $2 million bond and that her relationship with Mr. Goudreau would help assure Mr. Goudreau's compliance with the conditions of his release.

13

At the hearing, the government, through Assistant United States Attorney Cherie Krigsman who was covering on behalf of the assigned Assistant United States Attorney, attempted to introduce certain exhibits in support of its argument. Defense counsel immediately objected, stating that the Assistant United States Attorney assigned to the case, Risha Asokan, had communicated that the government would not be introducing any exhibits. The Court provisionally reviewed the exhibits but ordered the government to file a pleading indicating the position of Assistant United States Attorney Asokan as to what had been communicated to defense counsel. After the hearing, Assistant United States Attorney Asokan filed a notice of pleading, indicating that she failed to advise Assistant United States Attorney Krigsman as to what had been communicated to defense counsel and apologizing to the Court. (Doc. # 55). Assistant United States Attorney Asokan stated that she communicated to defense counsel on August 23, 2024, that at that time, the government did not intend to rely on information not contained within the government's motion and exhibits, but if the government decided to present additional information to the Court, those exhibits would be shared with defense counsel before the hearing. (Id. at 1). The additional exhibits that AUSA

14

Krigsman attempted to introduce at the hearing were shared with defense counsel twenty minutes before the hearing. (Id. at 2). Under the circumstances, government exhibits one through four should not be admitted into evidence.

The Court concludes that the government has failed to satisfy its burden of showing that there is not a combination of conditions that will ensure the appearance of Mr. Goudreau at future court proceedings and the safety of the community. Considering all of the conditions listed on the Court's Release Order (Doc. # 58), the Court finds that there are conditions of release that will reasonably assure both Mr. Goudreau's appearance at future court proceedings and the safety of the community. Therefore, the Court affirms Judge Stein's conclusion that Mr. Goudreau should be released and will enter a release order specifying the conditions of Mr. Goudreau's release pending trial.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

The United States' Motion for Revocation of Release Order (Doc. # 22) is **DENIED**. Additionally, the stay issued by this Court (Doc. # 10) is **LIFTED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 5th day of September, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE