UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,        CASE NO. 8:24-CR-330-VHC/CPT

v.

JORDAN GUY MACDONALD GOUDREAU and YACSY ALVAREZ,

    Defendants.
_____/

### DEFENDANTS' REPLY TO GOVERNMENT'S RESPONSE TO THEIR NOTICE OF PUBLIC AUTHORITY DEFENSE

The government's response provides an incomplete picture of the facts and a too narrowed application of the law for facts present here.

First, the government alleges that "based on both pre- and post- indictment inquiries… the government is not aware of any evidence that any government official 'affirmatively communicated' to Goudreau that Vice President Mike Pence authorized Operation Gideon." [D.E.117 at 2.]. Surely these inquiries were incomplete because the government did not have the benefit of Mr. Goudreau's Notice of Public Authority. In fact, at the status conference on December 20, 2024 the government specifically requested that the defense be ordered to notice their public authority defense because the government was in the dark as to Mr. Goudreau's and Ms. Alavarez's defense. [D.E. 101]. The government resisted all defense efforts to engage in due diligence prior to disclosing their public authority

defense. In fact, the defense sent the government three very detailed letters[1] over the course of five weeks requesting information to ensure that Mr. Goudreau's and Ms. Alvarez's public authority defense was accurate and made in good faith. The defense was only met with refusals. And it was only after the disclosure of the public authority notice that the government turned over key interview reports, for interviews that took place over four years ago, that support the defense, *i.e.*, Nestor Sainz and Roen Kraft, among other items. *See* N. Sainz interview at Exhibit A.

As to the law, the government relies on the narrow fact pattern in, *United States v. Alvarado*, 808 F.3d 474 (11th Cir. 2015) to support its assertion that because Vice President Pence did not personally confer authority to Mr. Goudreau, the defense is not valid. While *Alvarado* is the leading public authority case, it involved a straightforward criminal drug enforcement case, where a confidential informant (CI) abused his actual government authority to conduct otherwise illegal drug purchases and criminal acts. The court found the CI conducted an unauthorized criminal "entrepreneurial venture" involving drugs and when caught, tried to claim he was operating within the authority he had been given by agents of the Drug Enforcement Administration ("DEA"), *see Alvarado*, 808 F.3d at 478.

This is not a straightforward drug case. This case concerns a covert intelligence/paramilitary operation with substantially different norms and standards

---

[1] Letters were on November 15, 2024, November 26, 2024, and December 5. 2024.

for giving authority to agents and with planned acts of deception, and deniability, particular with respect to failed operations. "We lied, we cheated, we stole," said former Secretary of State (2018–2021) Mike Pompeo, contrasting the values taught at West Point with those necessary for the conduct of covert operations under his direction as CIA director.[2] This makes a public authority defense challenging, in which Defendants assert authority effectively came from the nation's top Executive, the President of the United States. To be clear, Defendants assert that the public authority came from the President, through the Vice President acting through intermediaries including the National Security Council ("NSC") and others, including Keith Schiller.

Defendants' original Notice referenced President Donald Trump's State of the Union address on February 4, 2020. Since filing the Notice, Defendants have learned that President Guaido' and aides met with President Trump and others in the Oval Office the following day, *See* meeting photo at Exhibit B.

Former Secretary of Defense Mark Esper was present and describes this meeting in his book, MARK T. ESPER, A SACRED OATH: MEMOIRS OF A SECRETARY OF DEFENSE DURING EXTRAORDINARY TIMES at 299–303 (2022). Esper met with President Trump beforehand "trying to learn if the NSC[3] had put any outlandish

---

[2] Remarks at Texas A&M University, Apr. 15, 2019, available at https://www.youtube.com/watch?v=x6wbfjspVww (last accessed Jan. 31, 2025).
[3] National Security Council. Note that Jason Beardsley, a government official and Schiller associate, flatly *refused* to tell the FBI the identities of his NSC contacts. DISC-101039.

ideas in Trump's head." In the meeting with Guaido', President Trump asked "What if the U.S. military went down there and got rid of Maduro?" This was a question that Esper wrote made him "wince," but he pressed Guaido' on his ability to organize an expatriate force.

> Then, out of the blue, one of Guaido's colleagues looked at me from across the table and said something like "We have some plans you [the U.S. government] know we are working on, they're just not ready yet." There was some quick reference to Florida too. As he finished the sentence, he smiled, looked away from me, and made eye contact with [Mauricio] Claver-Carone, the NSC senior director [for the Western Hemisphere, whom Esper described as full of "passion," as someone for whom this matter seemed "too personal" and][4] who was pressing the hardest for military action. . .. Something was up. . . In early May 2020, two former U.S. Special Forces soldiers led a group of nearly sixty Venezuelan dissidents in a failed attempt ... Guaido' reportedly approved the operation. . .. [T]he U.S. government was not involved in this operation, to the best of my knowledge. However, I often wondered if this was the plan referred to by Guiado's team at the White House back in February and, if so, to what degree was the NSC aware and involved.

Defendants submit that Secretary Esper's suspicions were fully justified. In text messages, on January 7, 2020, Jason Beardsley[5], tells Mr. Goudreau "...if its so fast you're moving beyond the pace of interested parties let me know and we'll look at how else we can do to support best." On February 5, 2020, Beardsley tells Mr. Goudreau "…great to see Juan up there last night." This is a direct reference to Guiado's presence at the State of the Union and President Trump endorsing him.

---

[4] Just named Special Envoy to Latin America. *See* https://www.reuters.com/world/us/trump-picks-latin-american-envoy-previously-fired-alleged-misconduct-2024-12-22/.

[5] Jason Beardsley has served in various positions including Office of the Secretary of Defense and Secretary of the Department of Veteran Affairs.

Beardsley's and Mr. Goudreau's messages are at Exhibit C. Similarly, text messages between Mr. Goudreau and Drew Horn[6] make clear that they are meeting and discussing Operation Gideon. Specifically, on November 26, 2019, Horn tells Mr. Goudreau "I talked to my state and ONDCP contacts, good conversations". On December 9, 2019, Horn tells Mr. Goudreau "We've war gamed things out to the best of our ability, he's got the next step." And when things go wrong with Operation Gideon, Mr. Goudreau reaches out to Horn for assistance. The text messages are at Exhibit D. It is no coincidence that Mr. Goudreau had access to and was communicating with Beardsley and Horn.

In addition to the text messages, there is a lengthy and detailed General Services Agreement executed by Mr. Goudreau, his company, Silvercorp, and the recognized President of Venezuela, Juan Guaido on behalf of the Republic of Venezuela regarding Operation Gideon. The contract is at Exhibit E.

To date, all the information used to corroborate Mr. Goudreau's and Ms. Alvarez's public authority defense has been found in public sources and non-classified materials. If this is what is publicly available, this Court can only imagine the wealth of information that is classified regarding Operation Gideon, that supports the public authority defense, and that the government is refusing to turn over.

---

[6] Drew Horn was the Director of National Intelligence.

| | |
|---|---|
| Date: February 4, 2025 | Respectfully submitted, |
| CHRISTOPHIR A. KERR, P.A.<br>13801 Walsingham Road, A-154<br>Largo, Florida 33774<br>Telephone: (727) 492-2551<br>Facsimile: (727) 593-9822 | TACHE, BRONIS AND DESCALZO, P.A.<br>150 S.E. 2 Avenue, Suite 600<br>Miami, Florida 33131<br>Telephone: (305) 537-9565<br>Facsimile: (305) 537-9567 |
| By: */s/ Christophir A. Kerr*<br>**Christophir A. Kerr, Esq.**<br>Florida Bar No. 072041<br>christophirkerr@gmail.com<br>*Counsel for Yacsy Alexandra Alvarez Mirabal* | By: */s/ Marissel Descalzo*<br>**Marissel Descalzo, Esq.**<br>Florida Bar No. 669318<br>mdescalzo@tachebronis.com<br>service@tachebronis.com<br>*Counsel for Jordan Guy MacDonald Goudreau* |

## CERTIFICATE OF SERVICE

I CERTIFY THAT, on this 4th day of February, 2025, the foregoing was electronically transmitted via the Court's CM/ECF system.

By: */s/ Marissel Descalzo*
    **Marissel Descalzo, Esq.**