UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:24-CR-330-VMC/CPT

UNITED STATES OF AMERICA,

v.

JORDAN GUY MACDONALD GOUDREAU,

Defendant.

_____/

**JENNIFER GATIEN'S REPLY TO DEFENDANT'S RESPONSE TO
TIME-SENSITIVE MOTION TO RELEASE BOND AGREEMENT**

Jennifer Gatien, by counsel, respectfully files this Reply to Defendant's Response to Jennifer Gatien's Time Sensitive Motion (ECF 192).

**ARGUMENT**

Defendant's explanation as to the impetus for Ms. Gatien filing her Motion to Release Bond Agreement ("Motion") could not be further from the truth. Defendant seeks to paint the current circumstances as stemming from a property dispute between Ms. Gatien and Defendant, one in which both sides are to blame, and the falling out of a "domestic" relationship. Indeed, Ms. Gatien harbors no ill will towards Defendant and insisted that Defendant be provided the opportunity to file his own motion, one which would not be prejudicial to him in any way (Ex. A).[1]  Her reward for this gesture of

---

[1] In addition to the offer made by undersigned counsel on September 17, 2025, Ms. Gatien sought to negotiate a modification to Defendant's bond on November 5, 2024, and multiple times since that date, which never manifested. (Ex. B, C, and D). These efforts followed Defendant's failure to provide the collateral he agreed upon and were made in good faith to resolve this matter without court intervention.

goodwill was Defendant's attempt to obtain false declarations against her and his stated intent to "burn her f\*\*king eyes out in court," should she offer testimony at his bond hearing (Ex. E). And although it is true that Defendant has taken property from Ms. Gatien and has sought to use that property as leverage against her, that dispute was never made part of any of the negotiations related to the Motion before this Court (Ex. A).

Defendant's portrayal of his relationship with Ms. Gatien as a supposed multi-year domestic partnership is patently false. In fact, Defendant has admitted that he and Ms. Gatien were not in any relationship other than as close, personal friends, and his attorney knows this to be the case as well (Ex. P). Ms. Gatien never shared a lease or maintained a joint household with Defendant and any limited assistance Ms. Gatien extended to Mr. Goudreau was temporary and charitable. For more than a year, there has been no shared living arrangement of any kind. Rather, Mr. Goudreau resided with his court appointed custodian, Ryan Reeves, until that arrangement ended abruptly due to Mr. Goudreau's volatile behavior. Regarding the text messages and Instagram "like" cited by Defendant as evidence of a "domestic relationship" (ECF 192 at 4 and 6), the former was inadvertent (Ex. AA) while the later was triggered by Defendant's own statements (Ex. BB).

As another example of Defendant's obfuscation which undersigned counsel can directly attest to, Defendant has never had any form of attorney-client relationship with the Binnall Law Group and undersigned counsel has confirmed this after conducting an exhaustive search for any evidence of an agreement to represent Defendant in a "pardon application" or otherwise. Undersigned counsel could not find so much as a single communication between any member of the Binnall Law Group and Defendant, and counsel for Defendant, Marissel Descalzo, has not provided any evidence of this supposed relationship upon direct request. (Ex. F).

Rather, Ms. Gatien filed her Motion because, as previously stated, she no longer believes that either the posted collateral, or any goodwill, is sufficient to ensure that Defendant will comply with the conditions of his pre-trial release, and thus her financial exposure has become untenable. Indeed, any attempt to enforce the established agreements between Defendant and Ms. Gatien have been met with repeated abuse. And although it is true that Defendant has responded to the Motion and has announced his intention to appear at the upcoming hearing scheduled for October 29, 2025, Defendant's instability, false statements, refusal to honor his commitments, access to liquid assets, and overt hostility gives Ms. Gatien pause. Defendant's hostility is so palpable that he has managed to alienate almost everyone who has sought to help him throughout this process, including Ms. Gatien, Ryan Reeves, and his former friends Jason and Brande Wollems, who graciously allowed him to store his property at their personal residence for over a year.

The attempt by defense counsel to shift responsibility onto Ms. Gatien is inconsistent with counsel's own prior acknowledgments of Mr. Goudreau's dishonesty and manipulative behavior. Defense counsel is well aware of Mr. Goudreau's established pattern of misrepresentation, volatility, and financial coercion—corroborated by multiple witnesses and documented communications. To now suggest that Ms. Gatien is the source of the dysfunction, despite that knowledge, is inaccurate and misleading. Mr. Goudreau's conduct toward counsel, friends, and associates follows the same pattern evident throughout his interactions with others: deflection of blame, shifting narratives, and hostility when confronted with accountability (Ex. CC). The record demonstrates that this behavior is not unique to Ms. Gatien but emblematic of Mr. Goudreau's broader strategy to manipulate perception and evade responsibility.

## I.     Defendant reneged on his agreement to provide collateral.

Despite Defendant's statements to this Court, there is no dispute that Defendant agreed to provide collateral as a condition of Ms. Gatien becoming the surety to his bond agreement. This agreement was negotiated prior to Ms. Gatien assuming her role as surety and as early as September 3, 2025 (Ex. G). This agreement is further substantiated by the numerous conversations which took place over the following months as Ms. Gatien sought to hold Defendant to his agreement. (Exs. H, I, J, and K). This agreement was also discussed in front of numerous other witnesses during a Zoom call in November of 2024, which included Defendant, his attorney, Ms. Gatien, Ms. Gatien's father (Peter Gatien), and Ryan Reeves. (Ex. J). Although Ms. Gatien was unclear as to the totality of Defendant's assets at the time the agreement was made, the purpose of the agreement was twofold: (1) to ensure that Defendant was equally invested in his release and (2) to ensure that Defendant's liquid assets were held by his attorney and thus unable to be accessed in the event Defendant failed to abide by the conditions of his pre-trial release. In other words, if Ms. Gatien was willing to put everything on the line for Defendant, then she wanted to know Defendant was willing to reciprocate through a display of good will and accountability. Ms. Gatien continued her efforts to enforce the agreement up until July of 2025, when it became abundantly clear that Defendant would never uphold his end of the bargain and had acted entirely in bad faith. (Ex. L). Tellingly, neither Defendant nor his counsel ever challenge the existence of this agreement prior to their most recent filings.

## II.     Defendant's liquid assets.

In addition to his personal property, Defendant has extensive reserves of liquid assets including gold coins, gold bullion, crypto currency, and cash. (Exs. M, N, and O).

Although the exact amount of these assets are unknown to Ms. Gatien, Ms. Gatien personally witnessed the contents of one crypto currency wallet to be no less than $800,000 as of November 2024. Furthermore, Defendant later disclosed that he had hidden approximately $100,000 in gold coins within the ceiling of Ms. Gatien's apartment. Although Defendant initially extended these coins to Ms. Gatien as partial fulfillment of his agreed upon collateral, Ms. Gatien returned a portion of the coins to Defendant's counsel and provided the remainder to Defendant.

### III.  Defendant's abusive conduct.

Contrary to Defendant's assertion that Ms. Gatien and Defendant are merely going through a "domestic" falling out, Defendant's wrath is not solely directed at Ms. Gatien. Rather, Defendant has directed his rage against anyone who has sought to hold him accountable, including Ms. Gatien, Ryan Reeves, the prosecution, and his own attorney. (Exs. Q, R, S, T, U, V, W, X, and Y). And as can be seen from these exhibits, Defendant used his abusive conduct to intimidate and control Ms. Gatien as the surety. (Ex. W). In the words of his own attorney, "He takes advantage of everyone!" (Ex. Z).

Dated: October 20, 2025

Respectfully submitted,

/s/ Gerald A. Urbanek, Jr.
Gerald A Urbanek, Jr., FBN 1032592
Jason C. Greaves, FBN 1059179
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
gerald@binnall.com
jason@binnall.com
*Counsel for Jennifer Gatien*

## CERTIFICATE OF SERVICE

I certify that on October 17, 2025, a copy of the foregoing was served on counsel for Defendant, Marissel Descalzo, and AUSA Risha Asokan via email. Due to system-wide technical errors that persisted from October 17 through October 20, 2025, undersigned counsel was unable to file with the Clerk of Court using the Court's CM/ECF system. I further certify that on October 20, 2025, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Gerald A. Urbanek, Jr.
Gerald A. Urbanek, Jr., FBN 1032592
*Counsel for Jennifer Gatien*