# EXHIBIT E

We, Brande and Jason Woolems, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of our knowledge and belief:

1. We first met Jordan Goudreau several years ago.

2. In 2024, Jordan informed us that he had moved into a rented room in New York and did not have space for his belongings. At his request, we stored his property, including his motorcycle and truck, at our home.

3. In April 2024, Jordan shipped additional boxes to us because he said he was moving onto a sailboat he had rented in New York City and still had no place to keep his belongings. We continued to hold his property until August 2024.

4. In August 2024, Ms. Jen Gatien called and informed us that Jordan had been arrested and was requesting access to his military files for his attorney.

5. While reviewing Jordan's stored paperwork to locate the Army documents, we discovered Ms. Gatien's naturalization certificate among his belongings.

6. After Jordan's release from custody, he contacted us regularly and asked that we continue to store his belongings and that he would send someone to retrieve his motorcycle.

7. In April 2025, Jordan shipped more boxes to our home to be stored.

8. Around May 2025, Jordan instructed us not to return any items to Ms. Gatien without his approval.

9. In June 2025, Jordan told us that Ms. Gatien would be coming to Oklahoma to retrieve her property.

10. Initially, Jordan told us to give her full access to everything and to allow her to take what she determined was hers. He said, "It's only stuff, man," and he seemed fine with her presence.

11. On the day of her arrival, Jordan called again and said she was "the person he hated most" and wanted us to limit any conversations with her.

12. On July 1, 2025, Jordan phoned and launched into an

extended tirade about Ms. Gatien. He was shouting, incoherent at times, and used profanity. His tone was alarming and far more volatile than anything we had heard from him before. He said his brother would come to retrieve his remaining property, that he would never go back to jail and abruptly ended the call saying, "If I don't see you again, have a nice life, bro." He instructed us not to share any information about moving his belongings or any other info with Ms. Gatien.

13. Immediately after his call, we contacted Ms. Gatien to warn her about what Jordan had just told us. We asked that she keep our outreach confidential because we were concerned about Mr. Goudreau's reaction.

14. In the weeks that followed, Jordan continued to call and express anger toward Ms. Gatien. When we reminded him that Ms. Gatien had posted his bond, he replied that his lawyer "made her do it."

15. On August 16, 2025, Jordan asked us to ship him a pair of military-grade night-vision goggles from his stored belongings. He also demanded that we have no communication with Ms. Gatien, stating that he did not want her to know anything and he was concerned that she was trying to reach him.

16. Our last conversation with Jordan was on September 24, 2025, when he asked us to sign written statements accusing Ms. Gatien of misconduct so that he could "burn her f'ing eyes out in court." When we declined, he called us "Judas" and accused us of betrayal, yelling repeatedly in anger. From that point forward, we ceased all direct communication with Mr. Goudreau.

17. We emailed his attorney, Ms. Marissel Descalzo, to arrange for Jordan's remaining belongings to be collected and to request that any further communication go through her.

18. When Ms. Descalzo later emailed us asking to discuss Ms. Gatien's filing, we declined and reiterated that we did not want any further involvement or contact with Jordan.

19. On October 15, 2025, Ms. Descalzo said Jordan would get his belongings.

20. Without notice, a person with no identification arrived unannounced on our property to pick up rifles and other belongings belonging to Mr. Goudreau.

22. We make this statement voluntarily and under penalty of perjury that the foregoing is true and correct to the best of our knowledge and belief.

Executed on October 17, 2025 in the State of Oklahoma.

*[signature]*
Brande Woolems

*[signature]* 17 Oct 2025
Jason Woolems