UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:24-cr-330-VMC-CPT

JORDAN GUY MACDONALD GOUDREAU

**UNITED STATES' MOTION FOR DECLARATION OF BAIL FORFEITURE, TO SET ASIDE BAIL FORFEITURE AS TO SURETY, AND FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT**

On October 31, 2025, the defendant, Jordan Goudreau, failed to appear at a hearing as to his bond conditions. The defendant had been notified of the hearing both in person by the Court and through counsel. The defendant's failure to appear breached a condition of his appearance bond, which included bail in the amount of $2,000,000, secured by property owned by Jennifer Gatien, a third-party surety. Weeks before the defendant's nonappearance, Ms. Gatien moved the Court to release her from the defendant's bond agreement, alleging that the defendant had indicated that he intended to flee. But the defendant, seeing the writing on the wall, absconded before the Court ruled on her request, and he remains a fugitive. Accordingly, pursuant to Federal Rule of Criminal Procedure 46(f), the United States respectfully requests that the Court declare the defendant's bail of $2,000,000 forfeited, set aside the bail forfeiture amount as to Ms. Gatien, and enter default judgment in the amount of $2,000,000 as to the defendant only.

I. **BACKGROUND**

The Court is familiar with the procedural history of the case. On September 5,

2024, United States District Judge Virginia M. Covington denied the government's motion to revoke bond, entered an amended order of release, Doc. 58, and signed a $2,000,000 appearance bond (the "Bond Agreement") secured by "the agreement of the defendant and each surety to forfeit" Jennifer Gatien's (the "Surety") New York City apartment, Doc. 57. In signing the Bond Agreement, the defendant agreed "to follow every order of this court" and "that this bond may be forfeited if I fail: to appear for court proceedings," as well other terms. Doc. 57 at 1. The Bond Agreement further warned the defendant:

> *Forfeiture of the Bond.* This appearance bond may be forfeited if the defendant does not comply with the above agreement. The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement. At the request of the United States, the Court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interests and costs.

*Id.* The defendant and the Surety each co-signed the Bond Agreement on September 5, 2024:

**Declarations**

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:
(1) all owners of the property securing this appearance bond are included on the bond;
(2) the property is not subject to claims, except as described above; and
(3) I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date: 09/05/2024                             *Defendant's signature*

Jennifer Gatien                                                              09/05/2024
*Surety/property owner – printed name*        *Surety/property owner – signature and date*

*Id.* at 2.

On September 19, 2025, the defendant filed a Motion to Modify Conditions of Release, requesting that "Mr. Goudreau's bond be modified so that Ms. Gatien can be removed as a personal surety." Doc. 180. The Motion focused on Mr. Goudreau's change in living circumstances and the purported strength of his public authority defense. Approximately 10 days later, on September 30, 2025, the Surety filed her Motion to Release Bond Agreement, including a reply brief and notice, alleging that the defendant was a flight risk and seeking to surrender the defendant back into the custody of the Court. (Docs. 185, 195, 206).

The parties, including the government, filed multiple briefs on the issue, culminating in an evidentiary hearing that began on October 29, 2025. Doc. 228. The Court heard testimony from the Surety, as well as witnesses with whom the defendant has or formerly had a close personal relationship. Docs. 228-229. Among other things, the Surety testified that the defendant had stated in no uncertain terms that he would not return to jail, and that the Surety believed, based on the defendant's conduct and statements, that he intended to flee. *See* Day 1 Hr'g Tr. 66:18 - 67:4; 74:21 - 75:2; 76:13 - 77:21; 98:22 - 99:5, Day 2 Hr'g Tr. 25:2-9; 37:5-40:23; 48:2 – 50:22. Another witness, Jason Woolems, testified that he believed the defendant was capable of violence, Day 2 Hr'g Tr. 94:7 – 95:20, and his wife, Brande Woolems, corroborated the Surety's testimony that the defendant had made explicit threats to flee, Day 2 Hr'g Tr. 120:2 – 121:10 ("he calmly said, I will not go back to jail. I will leave. I'll kill myself. I'm not going back").

At the conclusion of the proceedings on October 30, the Court noted on the

record that the defendant had a "limited tenure" with Veterans Affairs (VA), where he had been residing in order to receive medical treatment. Day 2 Hr'g Tr. at 142. In response, defense counsel stated that the defendant would remain under the VA's care, and that only his domiciliary would change to a VA bed at the Salvation Army. *Id.* at 144. The Court, construing the defense's representation as "the same arrangement effectively that [the defendant] is already in," continued the hearing into the next day in order for the government to discuss the arrangement with Pretrial Services and the VA and present an informed position. *Id.* at 145.

The parties, including the defendant, were ordered to appear at 2:00 p.m. the next day for a hearing on the defendant's request to relocate to the Salvation Army. Doc. 231. In advance of the hearing, the government filed a motion to remand the defendant into custody. Doc. 229. The motion stated that the defendant's proposed bond modifications—extending his residence at the VA via the Salvation Army—were no longer sufficient to assure his appearance at trial. *Id.* Among other things, the government underscored that the unsecure Salvation Army facility with no limits on the defendant's ability to come and go was "not an equal safeguard to either full-time residence with a trusted third-party custodian or his current situation in the secure VA facility." *Id.* at 1-2. Making matters worse, the Surety had already sought to be relieved of any obligations under the bond, rendering the Bond Agreement effectively unsecured. *Id.* at 2.

At 2:16 p.m. on October 31, the Court commenced the hearing, observing that the defendant was not present in the courtroom. Doc. 235; Day 3 Hr'g Tr. at 3.

4

Defense counsel confirmed that the defendant knew that the hearing was being held at 2:00 p.m., stating that they had been in communication that day. Day 3 Hr'g Tr. at 4-5. The Court further inquired, and defense counsel confirmed, that the defendant had not complied with the Court's directive that he "remain[] at the Salvation Army . . . to establish residency prior to the 2:00 o'clock hearing." Based on the defendant's failure to appear, the Court issued a warrant for his arrest. Doc. 236.

The government immediately sought to locate the defendant, to no avail. Pretrial Services had been monitoring the defendant's movements through ankle monitoring and identified his last known location was at approximately 12:24 p.m. on October 31 at the VA facility in Tampa where he had been residing. The government later learned that an ankle monitoring device wrapped in aluminum foil had been found hidden in a piece of furniture at the VA facility. Pretrial Services confirmed the device had been assigned to the defendant.

According to information from the VA facility, the defendant checked out of the facility around 12:55 p.m. on October 31, about an hour prior to the court hearing that the defendant failed to attend. The defendant provided the reason for leaving as "court." The defendant's departure from the VA facility was also captured on video footage.

As of the date of this filing, the government has not apprehended the defendant, despite ongoing efforts to locate him.

On January 23, 2026, the Court entered an order directing the government to "submit a filing address its position with respect to Ms. Gatien's release from the

bond." The Court further ordered the government to address in its filing "the application of Federal Rule of Criminal Procedure 46(f), "the Diaz factors," and any other relevant considerations. See United States v. Alrahib, 2024 WL 4298263, at *3 (11th Cir. Sept. 26, 2024)." Doc. 263.

## II.   MEMORANDUM OF LAW

### A. Legal Standard

Rule 46 of the Federal Rules of Criminal Procedure governs the forfeiture of bail if a bond condition is violated. "The court must declare the bail forfeited if a condition of the bond is breached." Fed. R. Crim. P. 46(f)(1). The bail forfeiture may be set aside in whole or in part, however, if "the surety later surrenders into custody the person released on the surety's appearance bond" or "it appears that justice does not require bail forfeiture." Fed. R. Crim. P. 46(f)(2)(A)-(B). "If it does not set aside a bail forfeiture, the court *must*, upon the government's motion, enter a default judgment." Fed. R. Crim. P. 46(f)(3)(A) (emphasis added). "Subdivision (f)(4) provides that after entering a judgment under Rule 46(f)(3), the court may remit in whole or in part the judgment under the same conditions specified in Rule 46(f)(2)." *United States v. Gonzalez*, 452 F. App'x 844, 845 (11th Cir. 2011) (citing Fed. R. Crim. P. 46(f)(4)).

In *United States v. Diaz*, 811 F.2d 1412, 1415 (11th Cir. 1987), the Eleventh Circuit set forth several factors bearing on whether the bail forfeiture may be set aside because justice does not require it (the "*Diaz* factors"). "The general method of accomplishing this is to show that the bond forfeiture bears no reasonable relation"

to the following:

> 1) the cost and inconvenience to the government in regaining custody of the defendant,
> 2) the amount of delay caused by the defendant's default and the stage of the proceedings at the time of his disappearance,
> 3) the willfulness of the defendant's breach of conditions and the prejudice suffered by the government, and
> 4) the public interest and necessity of effectuating the appearance of the defendant.

*Id.* (citing *United States v. Parr*, 594 F.2d 440, 444 (5th Cir. 1979)). "Courts have refused to specifically emphasize any of these factors, nor are they the only factors that may be relevant." *Gonzalez*, 452 F. App'x at 845 (citing *Diaz*, 811 F.2d at 1415 n.2).

In determining whether setting aside or remission of bail forfeiture is warranted, the district court enjoys "virtually unbridled discretion." *Id.* The decision will be upheld unless it was an "arbitrary and capricious abuse of discretion." *Id.*

### B. Analysis

The instant motion includes three separate, but related requests for relief: (1) declaring the defendant's bail forfeited; (2) setting aside the bail forfeiture as to the Surety; and (3) entering default judgment in the amount of $2,000,000 against the defendant solely.

*First*, pursuant to Federal Rule of Criminal Procedure 46(f)(1), the United States requests that the Court declare the $2,000,000 bail forfeited based on the defendant's failure to appear at the October 31, 2025 hearing. The defendant's appearance at court hearings was an express term of the Bond Agreement that the

7

defendant signed. Doc. 57. Accordingly, the Court must declare the $2,000,000 bail forfeited. Fed. R. Crim. P. 46(f)(1).

*Second*, pursuant to Federal Rule of Criminal Procedure 46(f)(2), the United States requests that the Court set aside the bail forfeiture amount as to the Surety only. As an initial matter, because the defendant and the Surety both signed the Bond Agreement, they are joint and severally liable for the bail forfeiture. *See United States Balbuena*, 2009 WL 87413 at *1 (M.D. Fla. Jan. 13, 2009) (Pizzo, M.J.) (declaring bond forfeited after defendant's failure to appear at plea hearing and holding defendant and surety jointly and severally liable for the bond amount). But based on the circumstances of this case, including the Surety's timely notice of the defendant's intent to violate the Bond Agreement, "justice does not require bail forfeiture" as to the Surety. Fed. R. Crim. P. 46(f)(2)(B).

Holding the Surety jointly and severally liable for the bail forfeiture bears no reasonable relation to the *Diaz* factors. To be sure, the Surety assumed a degree of risk in agreeing to co-sign the defendant's Bond Agreement and secure the bail amount with her personal property. But during the evidentiary hearing, the Court heard lengthy testimony from the Surety as to her relationship with the defendant and her substantiated concerns that he would violate the terms of his Bond Agreement, thereby holding her responsible for his bail (i.e., the situation she currently faces). In sounding the alarm, the Surety, acting as a de facto third-party custodian, attempted to alert the Court of the defendant's nefarious intentions and protect her property from forfeiture.

This case is distinguishable from *United States v. Alrahib*, 2024 WL 4298263 (11th Cir. 2024), where the Eleventh Circuit affirmed the district court's denial of forfeiture remission as to the sureties. In *Alrahib*, the defendant violated "key conditions" of his pretrial release order, including attempted witness tampering, employment restrictions, and house arrest. *Id.* at *1. The government subsequently moved to revoke his bond, and the district court ordered forfeiture of the $2.5 million in bonds, which were secured by both a corporate surety and two individuals. *Id.* at *1-2. Following the defendant's conviction, the sureties sought remission of the $2.5 million, based on, in part, their lack of involvement in his violations. *Id.* at *2. In denying the sureties' request to remit the bond forfeiture, the district court observed that "setting aside the sureties' obligations on this bond would have future effects on bond commitments in this district because future sureties would not take their obligations seriously." *Id.* at *4 (internal marks omitted).

Unlike in *Alrahib*, here, justice does not require bail forfeiture as to the Surety. Importantly, the sureties in *Alrahib* did not make any effort to release themselves from the appearance bond in anticipation of the defendant's violations. To the contrary, the government there alleged that the sureties actually profited from the defendant's fraud while on pretrial release. *Id.* at *2. The Surety in this case retained counsel and undoubtedly incurred significant expense—and risked her own safety—in litigating her release from the Bond Agreement. And while all sureties understand "their potential exposure at the time of signing" an appearance bond should the defendant violate its conditions, the Surety in this case timely notified the Court that

9

the defendant intended to breach their contract. *Id.* at *4; *see id.* at *3 ("An appearance bond is a contract between the government on one hand and a principal and his surety on the other.") (internal marks omitted). Leaving the Surety to hold the bag would be a miscarriage of justice.

Conversely, the *Diaz* factors counsel against setting aside bail forfeiture as to the defendant, should he ever be apprehended. The cost and inconvenience to the government in attempting to locate the defendant will be significant, requiring a separate investigation and expenditure of federal resources both domestically and internationally. This case was previously set for trial in February 2026, approximately three months after the defendant fled. It has now been continued as to the co-defendant Yacsy Alvarez for June 2026. But as suggested during the Court's January 15, 2026 status conference, trial likely will be delayed again as Alvarez prepares a defense in the defendant's absence. Doc. 248. Additionally, it is indisputable that the defendant acted willfully in cutting his ankle monitor and fleeing this jurisdiction, and his absence materially prejudices the government's ability to prosecute this case. The public's interest in the resolution of this case—which, among other things, involved the imprisonment of two former U.S. servicemembers in Venezuela for over three years because of the defendant's conduct—favors holding the defendant accountable for the full amount of bail.

*Third*, the United States moves for entry of default judgment as to the defendant, Jordan Goudreau, solely. Fed. R. Crim. P. 46(f)(3)(A).

### III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court declare the defendant's bail forfeited, set aside the forfeiture as to the Surety, and enter default judgment against the defendant.

Respectfully submitted,

GREGORY KEHOE
United States Attorney

By: /s/ *Risha Asokan*
RISHA ASOKAN
Assistant United States Attorney
Florida Bar No. 1003398
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
Facsimile: (407) 648-7643
E-mail: risha.asokan2@usdoj.gov