UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:24-CR-330-VMC/CPT

UNITED STATES OF AMERICA,

v.

JORDAN GUY MACDONALD GOUDREAU,

Defendant.

_____/

**JENNIFER GATIEN'S RESPONSE IN SUPPORT OF THE UNITED STATES GOVERNMENT'S MOTION FOR DECLARATION OF BAIL FORFEITURE, TO SET ASIDE BAIL FORFEITURE AS TO SURETY, AND FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT**

Jennifer Gatien responds to the United States' Motion, Doc. 275, and joins in the requested relief. The Court should (1) declare the $2,000,000 appearance bond forfeited under Fed. R. Crim. P. 46(f)(1), (2) set aside the forfeiture as to Ms. Gatien under Rule 46(f)(2)(B) because "justice does not require" it, and (3) enter default judgment against defendant Jordan Goudreau only.

**PROCEDURAL BACKGROUND**

The procedural history is set forth in the United States' Motion and the Court is familiar with the record. Jennifer Gatien ("Ms. Gatien") posted her New York apartment as collateral on September 5, 2024. Doc. 57. When the defendant's conduct and statements convinced her that he was an imminent flight risk and would not honor the bond conditions, she filed a time-sensitive motion to be released, followed by a reply and supplemental briefing. Docs. 185, 195, 206. An evidentiary hearing on the surety-release and related bond issues occurred between October 29, 2025, and October 31, 2025. The

1

defendant failed to appear for the continued hearing on October 31, 2025, breaching the bond. Doc. 235; Oct. 31 Hr'g Tr. at 3. Following the defendant's failure to appear, an arrest warrant was issued.

## LEGAL STANDARD

Rule 46(f)(2)(B) permits the Court to "set aside in whole or in part a bail forfeiture if . . . it appears that justice does not require bail forfeiture." Middle District courts and the Eleventh Circuit evaluate this under the non-exhaustive *Diaz* factors, which were extensively covered by the government in their motion. However, courts in this district also acknowledge that the purpose of a bail bond "is not punitive" and "not to enrich the government or punish the defendant." *United States v. Alrahib*, 2024 WL 4298263, at *4 (11th Cir. Sept. 26, 2024) (quoting *United States v. Parr*, 594 F.2d 440, 444 (5th Cir. 1979)). Furthermore, in determining whether to exonerate a surety from forfeiture of their collateral, courts in this district should be cognizant of the effects that forfeiture will have on future surety conduct. *Alrahib*, 2024 WL 4298263, at 4. Here, setting aside forfeiture as to a responsible surety preserves the integrity of the bond system for future cases and is consistent with setting good precedent within the district.

## ARGUMENT

As to whether the Defendant can be held liable for the full amount of the bond, the bond agreement makes it clear that he can. Per page 1 of the bond agreement, "This appearance bond may be forfeited if the defendant does not comply with the above agreement. . . . At the request of the United States, the court may order a judgment of forfeiture *against the defendant* and each surety for the entire amount of the bond." Doc. 57 at 1 (emphasis added). This provision shows that the full amount of the bond may be collected from either the defendant or the surety in the full amount and within the

government's discretion. The Defendant is a signatory to the appearance bond and agreed to be held liable for the full amount.

Across the 11th Circuit, and within the Middle District, defendants have routinely been held jointly and severally liable on bonds secured by sureties. See *United States v. Balbuena*, No. 8:08-CR-271, 2009 WL 87413, at *1 (M.D. Fla. Jan. 13, 2009); *United States v. Urdaneta-Gonzalez*, No. 8:12-CR-260-T-30JSS, 2019 WL 527969, at *1 (M.D. Fla. Feb. 11, 2019); see also *United States v. Welcome*, No. 4:21-cr-114 (S.D. Ga. June 4, 2024).

Joint and several liability is defined as follows:

> A creature of tort law, joint and several liability "applies when there has been a judgment against multiple defendants." *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220–221, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994). If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount.

*Honeycutt v. United States*, 581 U.S. 443, 447–48 (2017). Here, should the government release Ms. Gatien from the bond, Defendant would be liable for the full amount, as recovery can be obtained from one defendant, or all defendants, in whatever allocation the government deems fit.

FRCP 46(f)(2)(B) states, "The court may set aside in whole or in part a bail forfeiture upon any condition the court may impose if . . . it appears that justice does not require bail forfeiture." Tellingly, a court cannot enter judgment unless upon the government's motion to enter default judgment (FRCP 46(f)(3)(A)) and a subsequent motion to enforce (FRCP 46(f)(3)(C)). This shows that the government has full discretion as to how, and from whom, it seeks to collect forfeited bail. This is also made clear through the language of the bond agreement itself, which states, "*At the request of the United*

*States*, the court may order a judgment of forfeiture." Doc. 57 at 1.

The record overwhelmingly supports setting aside forfeiture as to Ms. Gatien and the transcripts from the October 29 and October 30 hearings are replete with examples of her warning the Court as to the defendant's conduct and his risk of flight.[1] It is also undeniable that Ms. Gatien took her obligations seriously at all times while serving in her capacity as surety. Ms. Gatien recruited and maintained communication with a reliable custodian, Ryan Reeves, and advocated for Defendant's placement in a secured VA facility, where she hoped Defendant would receive treatment and stabilize. Ms. Gatien crafted an agreement with Defendant's attorney to take possession of his crypto-currency assets as a means of discouraging flight and increasing accountability, which Defendant violated.[2] Ms. Gatien made numerous attempts to check on the defendant's status, whether from the Defendant directly or from his attorney, Marissel Descalzo, and from his supervisor in the VA program, Col. D.J. Reyes.

Nevertheless, these efforts were to no avail and the defendant progressively cut off contact and directly frustrated Ms. Gatin's efforts at supervision. Weeks before the defendant absconded, Ms. Gatien expressly warned the Court that the Defendant was a flight risk and sought to surrender him back into custody. Doc. 185 at 1–2. At the two-day evidentiary hearing, Ms. Gatien testified under oath that the defendant had stated in no uncertain terms that he would not return to jail and that she believed, based on his

---

[1] Oct. 29 Hr'g Tr. 52:17, 55:1, 58:19, 59:9, 62:4, 67:24, 73:12, 75: 2, 76:16, 87:1, 93:22, 98:22, 99:1–22, 112:8, 118:22, 127:6–10, 134:4, 154:1–156:20, *United States v. Jordan Goudreau*, CR No. 24-330 (M.D. Fla. October 29, 2025); Oct. 30 Hr'g Tr. 25:2, 37:17, 38:21, 40:10, 40:21, 45:6, 47:12, 62:23, 74:17, 75:7–76:4, 95:18, 103:8, 118:11, 121:21, 142:11, 143:9, *United States v. Jordan Goudreau*, CR No. 24-330 (M.D. Fla. October 30, 2025).
[2] Oct. 29 Hr'g Tr. 31:8–32:10; 40:6–40:14.

conduct and statements, that he intended to flee. *See, e.g.*, Oct. 29 Hr'g Tr. 66:18–67:4, 74:21–75:2, 76:13–77:21, 98:22–99:5; Oct. 30 Hr'g Tr. 25:2–9, 37:5–40:23, 48:2–50:22.

Ms. Gatien testified that the defendant repeatedly told her that he would flee if she attempted to remove herself from the bond agreement. Oct. 29 Hr'g Tr. 74:8–76:19. When asked whether Defendant made statements to the effect of "pull the bond and I'm going to flee," she confirmed these threats were made multiple times. Oct. 29 Hr'g Tr. 76:13–16. Defendant blamed Ms. Gatien for any flight, stating it would be her fault if she tried to withdraw. *Id.* This was not idle talk; he made the threat not only to deter her from exercising her right to be released from the bond but also to punish Ms. Gatien should she challenge him. The very act of flight that he threatened would trigger forfeiture of her $2 million apartment was precisely the leverage he wielded in his attempts to force her to remain surety. Despite these threats, Ms. Gatien filed her motion and testified, placing her own financial security and safety at risk to protect this Court and the bond system and incurred significant financial expenses throughout the process. To forfeit Ms. Gatien's collateral under such circumstances would set precisely the opposite precedent courts in this district seek to encourage and would incentivize sureties to remain compliant and complicit with a defendant's misconduct, if such complicity protected their collateral.

To be sure, the sureties in *Alrahib* abetted the defendant's misconduct and profited from their relationship to the defendant. *Alrahib*, 2024 WL 4298263, at 2. The sureties in *Alrahib*, ranging from passive to complicit, surely deserved to have their collateral forfeited. In contrast, Ms. Gatien was proactive: she warned the Court in writing, sought to surrender the defendant, testified over two days, and incurred substantial personal expenses to comply with her obligations. Forfeiting her collateral would be punitive, not remedial. It would punish the one surety who did exactly what the system expects—report

risks and seek relief—while rewarding the defendant's manipulation and deceit.

Moreover, forfeiting Ms. Gatien's collateral would be a boon to the Defendant, as it would not only serve to exonerate his own debt to the government, but it would satisfy his own personal vendetta against Ms. Gatien. Conversely, setting aside the forfeiture as to Ms. Gatien will encourage future sureties to come forward rather than stay silent out of fear that challenging a defendant's misconduct will cost them their property. *Alrahib*, 2024 WL 4298263, at *4 (noting the significance of considering future effects on bond commitments in this district).

## CONCLUSION

For the foregoing reasons, Ms. Gatien joins the United States' Motion. The Court should declare the $2,000,000 bond forfeited, set aside the forfeiture as to Surety Jennifer Gatien and release her collateral, and enter default judgment against the defendant only.

Dated: March 25, 2026

Respectfully submitted,

/s/ Gerald A. Urbanek, Jr.
Gerald A Urbanek, Jr., FBN 1032592
Jason C. Greaves, FBN 1059179
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
gerald@binnall.com
jason@binnall.com
*Counsel for Jennifer Gatien*

## CERTIFICATE OF SERVICE

I certify that on March 25, 2026, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Gerald A. Urbanek, Jr.
Gerald A. Urbanek, Jr., FBN 1032592
*Counsel for Jennifer Gatien*