UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. Case No. 8:24-cr-330-VMC-CPT

YACSY ALEXANDRA ALVAREZ MIRABAL

_________________________________/

**ORDER**

This matter comes before the Court pursuant to the United States of America's Motion in Limine to Preclude Public Authority and Entrapment-by-Estoppel Defenses (Doc. # 294), filed on July 1, 2026, and Defendant Yacsy Alexandra Alvarez Mirabal's Motion for Evidentiary Hearing (Doc. # 304), filed on July 26, 2026. Each party has responded in opposition to the other's Motion (Doc. ## 303, 307), and the Government has replied in support of the former (Doc. # 310). For the reasons set forth below, the Government's Motion is granted, and Ms. Alvarez's Motion is denied.

**I. Background**

In July 2024, Defendants Jordan Guy Macdonald Goudreau and Yacsy Alexandra Alvarez Mirabal were indicted for conduct related to Operation Gideon, a failed plot to depose Venezuelan President Nicolás Maduro. (Doc. # 1). As part of Operation Gideon, Defendants allegedly "conspired to export

(and did export) AR-type firearms, night vision devices, laser sights, and other equipment from the United States to Colombia without obtaining the required export licenses," for the purpose of using such items to "carry out an armed incursion into Venezuela." (Doc. # 294 at 2). The fourteen-count indictment charged that Defendants illegally smuggled these goods out of the United States, in violation of federal export laws. (Doc. ## 1, 294 at 3-4). Mr. Goudreau was also indicted for unlawful possession of machine guns and unregistered silencers. (Doc. ## 1, 294 at 3-4).

On November 25, 2024, Ms. Alvarez filed a notice indicating that she "does not admit that [she] smuggled any weapons, but she does unequivocally state that any actions she took in connection with this matter were under the sincere belief that they were exempt from the law because they were authorized by persons acting under the authority of the United States Government." (Doc. # 78). Defendants subsequently filed a "Notice of Public Authority Defense," pursuant to Federal Rule of Criminal Procedure 12.3(a)(1), on January 10, 2025, representing that "Mr. Goudreau had authority from the highest levels of the executive branch for Operation Gideon as early as May 2019 and through May 2020." (Doc. # 109). As to Ms. Alvarez, the notice merely noted that she "relied in

good faith on Mr. Goudreau's belief that he had authority to move forward in Operation Gideon." (Id.).

According to Defendants, "Mr. Goudreau was recruited for Operation Gideon in May 2019," when Keith Schiller, identified as "President Donald Trump's longtime personal bodyguard," brought Mr. Goudreau to a meeting with "representatives of an organization known as Global Governments and individuals connected to then-recognized President of Venezuela Juan Guaidó." (Id.). At this meeting, Mr. Goudreau was allegedly advised of an operation "to assist President Guaidó with efforts to remove President Maduro," which was "sanctioned and approved by the executive branch, particularly, Vice President Mike Pence." (Id.). After seeking "further confirmation of the executive branch's approval," Mr. Goudreau was "connected to" Drew Horn, a policy advisor to Vice President Pence, who stated "others in the government were aware and keeping abreast of the situation, including [Jason] Beardsley," and "confirmed that Mr. Goudreau was authorized to do anything necessary." (Id.). Mr. Goudreau's company, Silvercorp, "signed a general services agreement with President Guaidó" in October of 2019. (Id.).

Pursuant to Federal Rule of Criminal Procedure 12.3(a)(3), the Government formally denied that Defendants

had "exercised the public authority" identified in their notice. (Doc. # 117). The Government emphasized the absence of "any evidence that any government official 'affirmatively communicated' to [Mr.] Goudreau that Vice President Pence had authorized the offense conduct alleged in the Indictment." (Id.). Likewise, the Government highlighted that, "as [Mr.] Goudreau well knew, neither Mr. Horn nor Mr. Beardsley would have had the actual authority to approve the offense conduct in this case." (Id.). Defendants replied shortly thereafter, asserting that "public authority came from the President, through the Vice President acting through intermediaries including the National Security Council . . . and others, including Keith Schiller." (Doc. # 124 at 3). But Defendants continued to rely on alleged communications that Mr. Goudeau exchanged with Mr. Horn and Mr. Beardsley. (Id. at 4-5).

In October 2025, Mr. Goudreau failed to appear for a bond hearing, which resulted in a warrant being issued for his arrest. (Doc. ## 235, 236). He is understood to have absconded and is consequently considered a fugitive. The case has continued as to Ms. Alvarez, however.

Now, the Government seeks to "preclude [Ms.] Alvarez from raising a public authority or entrapment-by-estoppel defense at trial" because she "has not proffered a sufficient

evidentiary foundation to support one or more of these defenses as a matter of law." (Doc. # 294). Ms. Alvarez has responded (Doc. # 303) and has requested an evidentiary hearing (Doc. # 304). The Government replied in support of its Motion and responded in opposition to Ms. Alvarez's Motion (Doc. ## 307, 310), and the Motions are ripe for review.

## II. Legal Standard

"A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial." In re Seroquel Prods. Liab. Litig., Nos. 6:06-md-1769-ACC-DAB, 6:07-cv-15733-ACC-DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably effect the fairness of the trial." Id. (internal quotation omitted). "A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." Id. (internal quotation omitted). As a result, "[t]he movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground." Id. (citation omitted).

Federal Rule of Evidence 401 defines "relevant evidence" as evidence having "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. All relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." United States v. Ross, 33 F.3d 1507, 1524 (11th Cir. 1994) (citing Fed. R. Evid. 402, 403). Use of Rule 403 to exclude relevant evidence is an "extraordinary remedy" whose "major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." United States v. Grant, 256 F.3d 1146, 1155 (11th Cir. 2001) (citation omitted).

"Generally, courts should not prohibit a defendant from presenting a theory of defense to the jury," but "some relevant factual basis for the defense should exist . . . before evidence or testimony is offered." United States v. Thompson, 25 F.3d 1558, 1564 (11th Cir. 1994); United States v. Baker, 438 F.3d 749, 753 (7th Cir. 2006) ("[A] court may preclude an affirmative defense by motion in limine only where

the court accepts as true the evidence proffered by the defendant and finds that the evidence proffered by the defendant, even if believed, would be insufficient as a matter of law to support the affirmative defense.”). “If a defendant offers no relevant evidence to support a defense, the court may properly bar its presentation at trial.” United States v. Wade, 399 F. App’x 471, 476 (11th Cir. 2010) (quoting United States v. Anton, 546 F.3d 1355, 1357 (11th Cir. 2008)).

The district court has broad discretion to determine the admissibility of evidence, and the appellate court will not disturb this Court’s judgment absent a clear abuse of discretion. United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998); see also United States v. Jernigan, 341 F.3d 1273, 1285 (11th Cir. 2003) (“Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury.”); Wade, 399 F. App’x at 476-77 (reviewing for abuse of discretion district court’s preclusion of public authority defense by motion in limine); United States v. Robinson, 180 F. App’x 92, 93-94 (11th Cir. 2006) (per curiam) (reviewing

for abuse of discretion district court's preclusion of entrapment-by-estoppel defense by motion in limine).

## III. Analysis

The Government seeks to preclude Ms. Alvarez from "asserting a public authority or entrapment-by-estoppel defense at trial." (Doc. # 294 at 1). Importantly though, the Government "does not seek to preclude [Ms.] Alvarez from being able to argue that she did not possess the requisite mens rea at the time of the alleged criminal conduct based on an honest, mistaken belief that she had government authorization," otherwise known as the "innocent intent defense." (Doc. # 310 at 1, 6-7); see also United States v. Alvarado, 808 F.3d 474, 486 (11th Cir. 2015) (distinguishing the innocent intent theory from "public authority and entrapment-by-estoppel, which are affirmative defenses").

Ms. Alvarez has acknowledged that she "may ultimately rely on the 'innocent intent' defense," and that "her case at trial would be virtually identical whichever of the three forms of this defense" is raised at trial. (Doc. # 303 at 1, 22). Nevertheless, she opposes the exclusion of the public authority and entrapment-by-estoppel defenses (Id.) and requests an evidentiary hearing (Doc. # 304). The Court will address each of these matters in turn.

**A. Public Authority Defense**

"A defendant may assert a public authority affirmative defense when [s]he has knowingly acted in violation of federal criminal law, but has done so in reasonable reliance on the authorization of a governmental official." Alvarado, 808 F.3d at 484. "The public authority defense is narrowly defined, however, and a defendant will not be allowed to assert the defense . . . unless [s]he meets certain evidentiary prerequisites." Id. "First, as the name of the defense implies, a federal law enforcement officer must have actually authorized the defendant to commit the particular criminal act at issue, and the defendant must have reasonably relied on that authorization when engaging in that conduct." Id. "Second, the government official on whom the defendant purportedly relied must have actually had the authority to permit a cooperating individual to commit the criminal act in question." Id.

"It is insufficient to allege that the government knew of the illegal activity, but declined to intervene and enforce the law. Rather, Defendants must show that they relied on some communication from a public entity with the actual authority to permit the illegal activity." United States v. Diamond Casino Cruise, LLC, No. 4:12-cr-141, 2013 WL 103563,

at *4 (S.D. Ga. Jan. 4, 2013); see also United States v. Johnson, 139 F.3d 1359, 1365 (11th Cir. 1998) (recognizing that the defendant "could not use" the public authority defense "unless he could show that he relied on official government communications before acting in a manner proscribed by law"). When, as in this case, the authorization of a government official is relied upon, "the official's approval of the conduct at issue" must be directly and affirmatively communicated to the defendant. Alvarado, 808 F.3d at 485.

The Government argues that Ms. Alvarez's "intent to rely on the affirmative defense of public authority at trial is a nonstarter" because she has failed to "specifically identify a United States official who authorized her conduct." (Doc. # 294 at 7-8). The Court agrees.

Ms. Alvarez states that "her conduct alleged in the indictment was authorized by President Donald J. Trump," which "will be corroborated by testimony of witnesses, White House records, President Trump's public statements — including those made to a joint session of Congress on February 4, 2020 — recorded recollections and statements of other senior administration officials." (Doc. # 303 at 2). In support of her public authority defense, however, Ms. Alvarez

never identifies a direct, affirmative communication authorizing her conduct from a government official with the actual authority to do so. This is fatal to her efforts to use the affirmative defense. Alvarado, 808 F.3d at 484 (citing Johnson, 139 F.3d at 1365-66).

Although Ms. Alvarez cites "her familiarity with many public statements and events reported by media as they occurred" as a foundation for "her honest belief" that the activity alleged was authorized by President Trump (Doc. # 303 at 5), this is insufficient for purposes of invoking public authority. See Alvarado, 808 F.3d at 491 ("An assumption that one is not required to obtain approval or that the approving official may well know of the intended action is not the same thing as having gotten authorization to take the action."). Likewise, Ms. Alvarez rightly disclaims the argument that "any foreign official or Jordan Goudreau could have given her the lawful authority to act as charged." (Doc. # 303 at 22). She instead appears to rely upon communications made to Mr. Goudreau by Mr. Schiller, Mr. Horn, and Mr. Beardsley (Id. at 7-13, 18-19), without substantiating their power to approve her alleged conduct.

In the absence of evidence that any of these individuals "actually had the authority to permit [Ms. Alvarez] to commit

the criminal act in question," the public authority defense is properly precluded. Alvarado, 808 F.3d at 484; see Wade, 399 F. App'x at 476–77 (affirming that "the district court did not abuse its discretion in precluding [the defendant]'s public authority defense from being presented to the jury" where he presented no evidence that the officials identified "had any authority to sanction" his unlawful activity). But even to the extent one of these individuals could lawfully authorize the activity alleged, Ms. Alvarez only cites communications that they exchanged with Mr. Goudreau (Doc. # 303), not with her personally as the affirmative defense requires. Alvarado, 808 F.3d at 484–85 (citing Johnson, 139 F.3d at 1365). Thus, Ms. Alvarez "offers no relevant evidence to support" this defense, and "the court may properly bar its presentation at trial." Wade, 399 F. App'x at 476–77 (quoting Anton, 546 F.3d at 1357).

The Government's Motion is granted as to the public authority defense. Ms. Alvarez is precluded from asserting this defense at trial.

**B. Entrapment-by-Estoppel Defense**

"In contrast to a public authority defense, which potentially protects a defendant who knowingly engages in acts that [s]he recognizes to be in violation of the law, an

entrapment-by-estoppel defense applies to a defendant who reasonably relies on the assurance of a government official that specified conduct will not violate the law." Alvarado, 808 F.3d at 484–85; United States v. Baptista-Rodriguez, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994) (noting the entrapment-by-estoppel defense "applies when a government official tells a defendant that certain conduct is legal and the defendant commits what would otherwise be a crime in reasonable reliance on the official's representation"). "If [the entrapment-by-estoppel] defense is asserted for the commission of a federal crime, the defendant must have relied upon a statement by an official or agent of the federal government." Robinson, 180 F. App'x at 93 (citation omitted).

As with the public authority defense, "entrapment-by-estoppel requires a showing that a government official affirmatively communicated to the defendant the official's approval of the conduct at issue." Alvarado, 808 F.3d at 485; United States v. Eaton, 179 F.3d 1328, 1332 (11th Cir. 1999) ("For a statement to trigger an entrapment-by-estoppel defense, it must be made directly to the defendant, not to others."). "Reliance on the official's statement must be objectively reasonable in light of the identity of the official, the point of law represented, and the substance of

the misrepresentation." United States v. Votrobek, 847 F.3d 1335, 1344-45 (11th Cir. 2017) (citation and internal quotation marks omitted). "Thus, entrapment-by-estoppel creates a narrow exception to the general rule that ignorance of the law is no defense." Alvarado, 808 F.3d at 485; see also United States v. Howell, 37 F.3d 1197, 1204 (7th Cir. 1994) (noting that entrapment-by-estoppel "is a defense that is rarely available").

The Government argues that "[w]ithout the identity of a government official who authorized the conduct, [Ms.] Alvarez's entrapment-by-estoppel defense also fails." (Doc. # 294 at 11). In response, Ms. Alvarez identifies Mr. Schiller as having acted with "apparent authority for President Trump" when he interacted with Mr. Gourdeau, such that Ms. Alvarez reasonably relied on Mr. Schiller's assurances. (Doc. # 303 at 22). The Court agrees with the Government.

Although Mr. Schiller may be considered a "close associate" of President Trump, and individuals associated with Operation Gideon "viewed [him] to be speaking directly for President Trump," Ms. Alvarez acknowledges that Mr. Schiller "acted on behalf of a private entity," rather than the Government. (Id. at 7). As a result, Ms. Alvarez cannot reasonably argue that, in relying on Mr. Schiller's purported

assurances, she believed she "relied upon a statement by an official or agent of the federal government." Robinson, 180 F. App'x at 93 (citation omitted). For much the same reason, she cannot rely on assertions made by Mr. Goudreau alone.

To the extent Ms. Alvarez cites the statements of other individuals, such as Mr. Horn, who communicated only with Mr. Goudreau, this too fails. This is because such statements needed to "be made directly to [Ms. Alvarez], not to others," to "trigger an entrapment-by-estoppel defense." Eaton, 179 F.3d at 1332. In the absence of "a showing that a government official affirmatively communicated to the defendant the official's approval of the conduct at issue," it is proper to exclude the entrapment-by-estoppel defense. Alvarado, 808 F.3d at 485; see also Robinson, 180 F. App'x at 93–94 (holding that the district court "did not abuse its discretion in granting the Government's motion in limine" where the defendant "failed to establish the elements of the defense of entrapment-by-estoppel"); United States v. Pardue, 385 F.3d 101, 108–09 (1st Cir. 2004) (affirming district court's motion in limine excluding the entrapment-by-estoppel defense where the defendant could not "put forth an affirmative representation by a government official that his conduct was or would be legal").

Accordingly, the Government's Motion is granted as to the entrapment-by-estoppel defense. Ms. Alvarez is precluded from asserting this defense at trial.

**C. Evidentiary Hearing**

"A district court is not required to hold an evidentiary hearing on a pretrial motion." United States v. Horne, 198 F. App'x 865, 869 (11th Cir. 2006) (per curiam) (quoting United States v. Beard, 761 F.2d 1477, 1480 (11th Cir. 1985)). The Court finds, based on the information already discussed, that no evidentiary hearing is necessary to aid in its resolution of the Government's Motion. Ms. Alvarez's Motion is thereby denied. See Diveroli v. United States, 803 F.3d 1258, 1263–64 (11th Cir. 2015) (recognizing "the district court did not abuse its discretion by denying an evidentiary hearing" on defendant's public authority defense where it was "frivolous and contradicted by the record").

The Government's request that Ms. Alvarez be precluded from raising a public authority or entrapment-by-estoppel defense, but not an innocent intent defense, at trial is granted. (Doc. # 294).

Accordingly, it is hereby

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) The United States of America's Motion in Limine to Preclude Public Authority and Entrapment-by-Estoppel Defenses (Doc. # 294) is **GRANTED.**

(2) Defendant Yacsy Alexandra Alvarez Mirabal's Motion for Evidentiary Hearing (Doc. # 304) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 21st day of October, 2026.

Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE